## McFADDEN v. McFADDEN.

1. DIVORCE—RESIDENCE—EVIDENCE.
   Evidence adduced in plaintiff husband's suit for divorce *held,*. to show his residence at time of institution of proceedings and for several years prior thereto was in this State (CL 1948, § 552.9).

2. UNITED STATES—SERVICE—RESIDENCE.
   A person neither gains nor loses a residence anywhere by reason of being employed in the service of the United States (Const 1908, art 3, § 2).

REFERENCES FOR POINTS IN HEADNOTES

[2, 3]  17 Am Jur, Divorce and Separation § 263.
[2, 3]  What constitutes residence or domicil within State for purpose of jurisdiction in divorce.   106 ALR  6.
 Domicil or residence of person in the armed forces.   148 ALR 1413;. 151 ALR 1468; 152 ALR 1471; 153 ALR 1442.

3. DIVORCE — JURISDICTION — RESIDENCE — EVIDENCE — SERVICE FOR UNITED STATES.

Trial court's finding on defendant wife's petition to set aside decree of divorce that court did not have jurisdiction in husband's suit for divorce because of his lack of residence in this State as required by statute *held*, error, where evidence showed that his legal residence was in this State, notwithstanding prolonged absences in the service of the United States in both military and civilian service (Const 1908, art 3, § 2; CL 1948, § 552.9).

4. SAME—FRAUD—EVIDENCE.

Claim that plaintiff husband was guilty of fraud on defendant, then in California, by representing to her that he had discontinued his bill for divorce in this State and that because of such fraud, the trial court properly set aside decree of divorce for plaintiff even though he assigned a different reason *held*, untenable under evidence presented.

5. SAME—REINSTATEMENT OF DECREE.

Decree of divorce is reinstated as of date of its original entry where, subsequent to the original entry, the trial court had erroneously set the decree aside.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 10, 1953. (Docket No. 46, Calendar No. 45,777.) Decided June 8, 1953.

Divorce proceedings by Vincent G. McFadden against Frances T. McFadden. Defendant petitions that plaintiff's decree be set aside. Order setting aside decree. Plaintiff appeals. Reversed and remanded.

*Allan B. Wallower,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

BOYLES, J. This is a divorce case. The only substantial question for review is whether the plaintiff, an officer in the United States Army, committed a

fraud on the court by claiming residence in Kent county. Service in the case was obtained on the defendant, residing in California, by publication, and by registered mail, of an order for such service. The defendant's return receipt, which was filed, showed receipt by her of such order approximately 3 months before her default for nonappearance was entered. The default proceedings were regular, and resulted in a *pro confesso* decree of divorce for the plaintiff April 11, 1952. About April 20th plaintiff was served with a summons to appear in a divorce case started by the defendant April 15, 1952, in California, where she had resided since late in 1950, separate from the plaintiff. So far as shown here, that case is still in court. About 2 months after the decree for plaintiff in the instant case had been entered in Kent county the defendant filed a petition in the case asking that the decree be set aside on the ground that the plaintiff had not resided in this State for 1 year, or in Kent county 10 days, immediately preceding the time of filing his bill of complaint.* The court granted the motion and the plaintiff appeals.

The parties were married at Louisville, Kentucky, May 14, 1949. At that time plaintiff's parents were living in Louisville and he was there on a visit to them. He was not in active United States service at that time. He had been in Guam about 2-1/2 years, as a civilian employee. The defendant's home was in California. After the marriage they took a trip that lasted until about the middle of August, 1949, when they came to Grand Rapids. He testified that he came back to Grand Rapids to stay. The defendant was in Grand Rapids from November, 1949, to September, 1950, employed for some time at Blodgett hospital. The record indicates that when the defendant returned to California in 1950 it was her intention to seek an annulment of the marriage. The

---

* CL 1948, § 552.9 (Stat Ann 1951 Cum Supp § 25.89).

plaintiff lived with his son in Grand Rapids for about 2 months, went to Indiana for a month or 2, back to Grand Rapids for 2 or 3 weeks with his son, then "took a month's duty in November of 1949 and went to Fort Riley"—apparently as a reserve officer in the United States service not on active duty—then he returned to Guam as a civilian employee. He returned to Grand Rapids in March, 1950, for about 2 weeks, then went to Washington, D.C., to see about a civilian job, but in the latter part of April was again ordered on active duty as a reserve officer of the Michigan District of Army. The Korean "War" broke out, he was kept in service, was sent to Fort Eustis, Virginia, reported there about the middle of November, 1950, after he had returned again to his son's home in Grand Rapids. He has been and still is in the United States Army service on active duty, with the rank of lieutenant colonel.

While plaintiff was in Guam about 2-1/2 years as a civilian employee, he had a family in Grand Haven, Michigan, to which place he returned in 1947. His residence was there at that time and his then wife obtained a divorce from him there in 1948 after he had again returned to Guam.

It is apparent from the record that during the time while plaintiff was in the active military service, beginning in 1940, and while he was overseas in the Second World War in 1942 and until separated from active duty in 1946, his legal residence was in Grand Haven in Ottawa county. Since, he terminated his residence there, and declared his intention to make Grand Rapids his home. We do not find from the record that he has resided in Grand Haven since 1949, up to the present time. After his marriage to the defendant in May, 1949, his domicile, hence his legal residence, outside the army, has been and still is in Grand Rapids, Kent county. See *Reaume & Silloway, Inc.,* v. *Tetzlaff,* 315 Mich 95. When his

bill of complaint was filed December 17, 1951, it was signed and sworn to in Alexandria, Virginia, at a time when he was in service at Fort Eustis, Virginia, as a lieutenant colonel in the army. He is registered in the service as residing in Grand Rapids, and has declared Grand Rapids to be his home where he will live when his army service is over. He did not have domicile in Virginia, as claimed by the defendant, or elsewhere, except in Grand Rapids. He neither gained nor lost a residence anywhere by reason of being employed in the service of the United States. Michigan Const (1908), art 3, § 2. He had changed his residence from Grand Haven, Ottawa county, to Grand Rapids, Kent county, after his family was broken up and his property in Grand Haven disposed of in the divorce there in 1948. Together with the defendant he went to Grand Rapids after their marriage in 1949. Since then his residence has been nowhere else. The trial court erred in concluding that it did not have jurisdiction on the basis of non-residence of the plaintiff in Kent county.

In their brief counsel for the defendant argue that the plaintiff was guilty of a fraud on the defendant by representing to her that he had discontinued his bill for divorce. In a letter written to her by him on February 13, 1952, while his divorce case was pending, he had said, "I stopped the court action as you requested." Defendant infers that because of such fraud the trial court properly set aside the decree, notwithstanding the fact that the court gave another reason for taking that action.

The statement, unless taken out of context, does not support defendant's claim of being misled. He wrote:

"When you left here I thought that you were sincere in plans to stop feeling sorry for yourself and to really try and get yourself straightened around a little. But your letters are the same old story of try-

ing to worry me to death. * * * I know that I must do something about it and all this letter writing is just a waster of time. All this talk of what we should of done is childish. Certainly even you after all the difficulties you have created cannot expect me to ever again think that I could trust you to be of any help to me. I stopped the court action as you requested but unless you actually going to get this annulment started now I am going to tell them to go ahead again. You know that I only have a few months to go* and that I wanted this cleared up before that time, but to you nothing matters but to cause me more trouble. * * * I am about to close a deal on my car and that will give me the money for the expense that you said you needed for the annulment, so, if you really intend to go thru with it give me the name of your atty and I will have a draft made out to him and send it to you so you can take care of whatever is required there. * * * This of course will be done if you take care of it there. If I have to do it here that will take all there is. Think it over and make up your mind, but I can tell you that under the existing conditions that there is nothing else I can do."

In reference to the same matter, he testified:

"*Q.* Now you state in this letter to Mrs. McFadden on the 13th of February 'I have stopped court action as you requested'?

"*A.* I did. It is in there. No, I didn't stop the action. I am under the impression I don't stop court action.

"*Q.* I say, what you told her in this letter was not true, was it?

"*A.* At the time I wrote it, I made the arrangements with the attorneys and they talked me out of it and I left it go."

A few days later (February 20th) plaintiff again wrote the defendant:

---

* Before retirement from military service.

"My Atty. in Grand Rapids, my Atty. here and all the army officials that have been in on this, all advise against any delay on my part as they are all convinced that you do not now or did you ever intend to get an annulment or a divorce. Your letters since you first left Mich. have been constantly threatening me in one way or another about what you would do to me if I do not give you more money. Again I say that your only interest in me is what you can chisel from me. I can see from your point where an annulment may be of some advantage to you, if so it is your privilege to get one. You have stated before that I will be a free man on May 14th. But I have learned the hard way that the truth means nothing to you. I cannot find one thing that you told me that was true and your protestations of love are only used by you as dollar sign. I have not changed my mind one bit. I would be a fool to do so. You say you will come to Michigan and fight the case, you have that right, and as I told you before the courts will make the decisions not you."

It is apparent that the defendant was not misled as to the plaintiff's intention. The nub of this controversy seems to be whether the decree of divorce in Kent county will stand, or whether there will be a divorce case in California. There were no children, and no property or alimony rights are involved here.

An order will be entered here setting aside the order of the trial court and reinstating the decree as of the date of its entry April 11, 1952, and remanding the case with direction for enforcement. Costs to appellant.

Dethmers, C. J., and Adams, Butzel, Carr, Bushnell, Sharpe, and Reid, JJ., concurred.